## JAMES A. LASH ET AL. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
### (SC 18461)

Rogers, C. J., and Norcott, Palmer, McLachlan and Bishop, Js.

Argued January 7—officially released April 5, 2011

*Eric V. Turner*, associate general counsel, with whom, on the brief, was *Colleen M. Murphy*, general counsel, for the appellant (named defendant).

*Valerie Maze Keeney*, assistant town attorney, for the appellees (plaintiffs).

*Opinion*

McLACHLAN, J. The named defendant, the freedom of information commission (commission), appeals[1] from the judgment of the Appellate Court reversing the judgment of the trial court in favor of the commission. The commission claims that the Appellate Court

---

[1] We granted the commission's petition for certification to appeal limited to the following issues: "(1) Did the Appellate Court properly conclude that the plaintiffs had sustained their burden of proof that the documents submitted for in camera review were privileged?

"(2) Did the Appellate Court properly conclude that the [commission] improperly imposed a civil penalty on the plaintiffs?" *Lash* v. *Freedom of Information Commission*, 293 Conn. 931, 980 A.2d 915 (2009).

Although we certified the first question, we note that the question incorrectly suggests that the Appellate Court determined whether the documents were privileged. In fact, the Appellate Court did not resolve that issue but remanded the case to the trial court to determine whether the documents were privileged. We disagree with the Appellate Court only to the extent that we conclude that we may resolve the question of whether the documents were privileged by conducting our own in camera review.

improperly concluded that: (1) the plaintiffs, James A. Lash, first selectman of the town of Greenwich (town), and the town board of selectmen, sustained their burden of demonstrating that certain documents were exempt from disclosure because they were protected by attorney-client privilege; and (2) the commission abused its discretion in assessing a civil penalty against Lash. We affirm the judgment of the Appellate Court except as to its order remanding the matter to the trial court.

The opinion of the Appellate Court sets forth the relevant facts and procedural history. See *Lash* v. *Freedom of Information Commission*, 116 Conn. App. 171, 174–76, 976 A.2d 739 (2009). Rather than reproduce those facts, we briefly summarize the salient points. In August, 2005, the defendant Stephen Whitaker[2] submitted a request pursuant to the Freedom of Information Act (act), General Statutes § 1-200 et seq., to Lash, seeking documents in connection with the town's response to a previous freedom of information request by Whitaker. That prior request had resulted in litigation, and the case ultimately was decided by this court, which affirmed the commission's final decision ordering disclosure of the requested records, with some limited exceptions. *Director, Dept. of Information Technology* v. *Freedom of Information Commission*, 274 Conn. 179, 181–83, 874 A.2d 785 (2005). With respect to the present request, the plaintiffs claimed before the commission that two documents that fell within the scope of Whitaker's request, exhibits K and L, were exempt from disclosure because they constituted attorney-client communications. In its final decision, the commission concluded that the plaintiffs had failed to prove that the two documents were privileged. On the basis

[2] Whitaker did not file a brief in this appeal, and did not join the commission's brief. Accordingly, we refer only to arguments advanced by the commission.

of the commission's finding of various violations of the act, including its findings that Lash did not promptly comply with the records request and unreasonably disavowed responsibility for providing access to records in the custody of departments over which he had authority, the commission imposed a civil penalty on Lash in the amount of $100.

The trial court dismissed the plaintiffs' appeal, concluding, inter alia, that the commission properly had found that the plaintiffs had failed to sustain their burden of showing that exhibits K and L were protected by attorney-client privilege[3] and that the commission had not abused its discretion in assessing a penalty against Lash. The plaintiffs moved to reargue, claiming that because the court's memorandum of decision did not clarify whether the court had conducted an in camera review of exhibits K and L, it was unclear whether the court had concluded that the documents were insufficient on their face to establish that the attorney-client privilege applied. The trial court denied the motion to reargue without comment. The Appellate Court reversed the judgment of the trial court, concluding that: (1) the trial court improperly had failed to apply the four factors that this court identified in *Shew* v. *Freedom of Information Commission*, 245 Conn. 149, 159, 714 A.2d 664 (1998), to determine whether the documents on their face justified a finding that the attorney-client privilege applied; and (2) the commission abused its discretion in ordering Lash to pay a $100 penalty. *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 180, 185. The Appellate Court

---

[3] We agree with the Appellate Court's observation that it is unclear whether the trial court reviewed exhibits K and L in camera in arriving at its conclusion. *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 180 n.9. The trial court's memorandum of decision does not indicate whether the court reviewed the exhibits, and when the plaintiffs moved to reargue, in part on the ground that the court had failed to conduct such an in camera review, the court denied the motion without comment.

also remanded the case to the trial court with direction to conduct an in camera review of exhibits K and L to determine whether they meet the four factors set forth in *Shew*. Id., 181. This certified appeal followed.

The commission claims that the Appellate Court improperly reversed the judgment of the trial court. Specifically, the commission argues that it correctly had determined that exhibits K and L were not sufficient on their face to establish that the documents were protected from disclosure pursuant to attorney-client privilege. Therefore, the commission argues, because the plaintiffs did not offer extrinsic evidence in support of their claim that the attorney-client privilege applied, the plaintiffs failed to meet their burden of establishing that the documents were exempt from disclosure.[4] The plaintiffs contend that the content of the documents should be considered within the circumstances of the case, and that the content, so considered, satisfies the plaintiffs' burden of establishing that the attorney-client privilege applied. Based on our in camera review of the documents, we agree with the plaintiffs.

As the Appellate Court explained, the question of whether the attorney-client privilege applies to the documents is governed by General Statutes § 1-210 (b) (10),[5] as interpreted by this court in *Shew* v. *Freedom*

---

[4] The commission's argument has evolved somewhat on appeal. Before the Appellate Court, and in its brief to this court, the commission argued that a public entity must *always* submit extrinsic evidence to sustain its burden of showing that documents are exempt from disclosure due to attorney-client privilege. At oral argument before this court, however, the commission framed its argument more narrowly, conceding that under certain facts, no extrinsic evidence may be necessary to establish that a document is privileged, but contending that, because it was unclear on the face of these *particular* documents that the attorney-client privilege applied, the plaintiffs were required *in the present case* to introduce extrinsic evidence to demonstrate that the documents were privileged.

[5] Section 1-210 (b) (10) expressly exempts "communications privileged by the attorney-client relationship" from the disclosure requirements of the act.

*of Information Commission,* supra, 245 Conn. 159, and General Statutes § 52-146r.[6] *Lash* v. *Freedom of Information Commission,* supra, 116 Conn. App. 178–80. As we summarized in *Maxwell* v. *Freedom of Information Commission,* 260 Conn. 143, 149, 794 A.2d 535 (2002), the essential elements of the attorney-client privilege under both statutory and common law are identical. Therefore, for purposes of both §§ 1-210 (b) (10) and 52-146r, we apply a four part test to determine whether communications are privileged: "(1) the attorney must be acting in a professional capacity for the agency, (2) the communications must be made to the attorney by current employees or officials of the agency, (3) the communications must relate to the legal advice sought by the agency from the attorney, and (4) the communications must be made in confidence." (Internal quotation marks omitted.) *Shew* v. *Freedom of Information Commission,* supra, 159.

Although we agree with the Appellate Court that the documents should be reviewed in light of the four factors in *Shew,* we disagree that it is necessary to remand the case to the trial court for that review. In this administrative appeal, the trial court was not the fact finder—any remand for further factual findings properly would be to the commission, not to the trial court. The mere fact, however, that consideration of whether the docu-

[6] General Statutes § 52-146r (b) provides: "In any civil or criminal case or proceeding or in any legislative or administrative proceeding, all confidential communications shall be privileged and a government attorney shall not disclose any such communications unless an authorized representative of the public agency consents to waive the privilege and allow such disclosure."

General Statutes § 52-146r (a) (2) defines " '[c]onfidential communications' " as "all oral and written communications transmitted in confidence between a public official or employee of a public agency acting in the performance of his or her duties or within the scope of his or her employment and a government attorney relating to legal advice sought by the public agency or a public official or employee of such public agency from that attorney, and all records prepared by the government attorney in furtherance of the rendition of such legal advice . . . ."

ments are privileged requires in camera review of them does not, however, necessarily require a remand to the fact finder. We have in the past reviewed the contents of documents to address the propriety of the commission's determination regarding the applicability of an exemption. See *Stamford* v. *Freedom of Information Commission*, 241 Conn. 310, 317–18, 696 A.2d 321 (1997) (reviewing record, including contents of two documents, and concluding that commission's determination that exemption did not apply was incorrect "as a matter of law").

Our review of the commission's decision "is governed by the Uniform Administrative Procedure Act [General Statutes § 4-166 et seq.] . . . and the scope of that review is very restricted. . . . With regard to questions of fact, it is neither the function of the trial court nor of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even as to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.) *Dept. of Public Safety* v. *Freedom of Information Commission*, 298 Conn. 703, 716, 6 A.3d 763 (2010).

We therefore turn to exhibits K and L to determine whether the commission acted unreasonably, arbitrarily, illegally, or in abuse of its discretion in concluding that those documents do not, on their face, establish that the attorney-client privilege applies. Our review of the documents is guided by the principle that the party claiming an exemption from the disclosure requirements of the act bears the burden of establishing the applicability of the exemption. *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 775, 535 A.2d 1297 (1988). "This burden requires the claimant of the exemption to provide more than conclusory language, generalized allegations or mere arguments of

counsel. Rather, a sufficiently detailed record must reflect the reasons why an exemption applies to the materials requested." Id., 776.

The commission found in its final decision that the documents are communications between Lash and the assistant town attorney acting in their official capacities. Thus, the first two *Shew* factors are not at issue. The commission also found, however, that the plaintiffs had failed to prove that the documents "relate[d] to legal advice sought by . . . town officials and employees, or that the information in the [documents] was requested to be given in confidence." We focus our review of the documents, therefore, on determining whether they satisfy the third and fourth *Shew* factors, that is, whether they establish that the communications relate to legal advice sought by the plaintiffs from the assistant town attorney, and that the communications were made in confidence. *Shew* v. *Freedom of Information Commission*, supra, 245 Conn. 159.

With respect to whether the documents relate to legal advice sought by the plaintiffs, the commission conceded in its trial briefs that both documents related to pending litigation; *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 180 n.9; and further conceded at oral argument before this court that the documents constituted legal advice from an attorney to a client. Also, as the Appellate Court aptly observed, exhibit K "states that it is regarding the [geographical information system] '(GIS) appeal' and discusses strategy and status relating to that litigation, which was pending at the time . . . ." Id., 182. Exhibit L also discusses strategy in connection with the pending litigation. The commission appeared to contend that it was necessary for the documents to contain an express request for legal advice. Absent such an express request on the face of the documents, the commission argued that the plaintiffs had failed to establish that they had "sought" the legal advice from the assistant town attor-

ney. Initially, we observe that exhibit L specifically states that the assistant town attorney took action in response to a suggestion by one of the town officials. Exhibit L reports the results of that course of action and offers a strategic analysis of those results. Even if we agreed with the commission that an express request on the face of the document were required, exhibit L arguably could satisfy such a test. Exhibit K does not reference any request for information to which it responds. We do not, however, require magic words to draw the reasonable inference that an attorney offers legal advice to a client regarding pending litigation because the client has "sought" the advice. The surrounding facts and circumstances make it clear that the plaintiffs sought the legal advice.

With respect to whether the communications were made in confidence, exhibit K, which is from the assistant town attorney to Lash, is expressly labeled: "CONFIDENTIAL Attorney-Client Communication DO NOT DISCLOSE." The five persons who received a copy of exhibit K all were employees or officials of the town. We have stated that "[w]hether a document expressly is marked as 'confidential' is not dispositive, but is merely one factor a court may consider in determining confidentiality." *Blumenthal* v. *Kimber Mfg., Inc.*, 265 Conn. 1, 15, 826 A.2d 1088 (2003). Certainly, however, the fact that a document is marked "confidential" creates a presumption of confidentiality. To the extent that the presumption may be rebutted, it is not dispositive. In the present case, however, exhibit K is not only labeled confidential, but also is expressly labeled as an attorney-client communication and warns the recipients: "Do not disclose." It is difficult to imagine a document that could be more clear on its face regarding whether and for what reason it is intended to be confidential. Moreover, we have recognized that "the exclusivity and limited number of distributees signifies that

[a communication] was intended to be confidential." (Internal quotation marks omitted.) *Blumenthal* v. *Kimber Mfg., Inc.*, supra, 16. Exhibit K was distributed to a limited group of persons, and there is no evidence in the record that any other party had access to the document. Exhibit L, although not labeled confidential, is a communication among the identical group of persons regarding the same pending litigation, and, like exhibit K, it discusses strategy. Moreover, as the Appellate Court noted, "there is no indication that any other party ever had access to the document." *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 183. Accordingly, it is clear from this context that exhibit L is likewise intended to be a confidential communication. *Blumenthal* v. *Kimber Mfg., Inc.*, supra, 16.

Based on our review of the documents, we conclude that the only reasonable conclusion that the commission could have arrived at is that the documents were privileged. Therefore, its determination that the documents were not privileged was incorrect as a matter of law, and the commission acted illegally, arbitrarily, unreasonably or in an abuse of its discretion. See *Stamford* v. *Freedom of Information Commission*, supra, 241 Conn. 317–18.

We next address the commission's claim that the Appellate Court improperly reversed the judgment of the trial court upholding the commission's decision ordering Lash to pay a civil penalty of $100. As we have stated in this opinion, the commission assessed the penalty based on its findings that the plaintiffs had violated various provisions of the act. All of those findings have been reversed on appeal.[7] The Appellate Court

---

[7] We granted certification to appeal with respect to only one of the underlying bases of the commission's assessment of the civil penalty. The remaining substantive bases for the assessment of that penalty were decided by the Appellate Court, which concluded that the commission: (1) abused its discretion in determining that the plaintiffs failed to provide prompt access to the requested records; and (2) improperly interpreted the town charter and the act in determining that Lash had a duty to inquire of the town law

properly concluded that the order that Lash pay the penalty cannot stand. *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 183.

The judgment of the Appellate Court is reversed only with respect to the order remanding the case to the trial court for further proceedings; the judgment of the Appellate Court is affirmed in all other respects.

In this opinion the other justices concurred.

department as to whether it had possession of any of the documents that Whitaker had requested. *Lash* v. *Freedom of Information Commission*, supra, 116 Conn. App. 184–88. We agree with the Appellate Court's resolution of these underlying issues, and emphasize our agreement with its conclusion that the commission's imposition of a two week time limit for compliance with a freedom of information request was an arbitrary limitation. Id., 184–85.